**GARBER et al. v. HAUSER et al.**

No. 9364—Opinion Filed Nov. 18, 1919.

(Syllabus by the Court.)

**1. Evidence — Parol Evidence — Varying Written Contract.**

Parol evidence is not admissible to add to, vary, or contradict the terms of a written contract, except upon proper allegations of fraud, accident, or mistake.

**2. Same—Impeaching Certificates of Acknowledgment—Sufficiency of Evidence.**

The general rule is that the unsupported or uncorroborated testimony of the grantor is not sufficient to overcome the certificate of acknowledgment of the notary public to a conveyance regular on its face, especially where the certificate is supported by the testimony of the officer who took the acknowledgment, or by other competent evidence, but such testimony may be sufficient if, in view of the circumstances and probability of the particular case, it produced a condition amounting to a moral certainty that the certificate is false.

**3. Oil and Gas—Lease—Construction.**

An oil and gas lease executed January 4, 1916, for the term of five years which contains the provision: "If no well be completed on said land on or before the 4th day of January, 1917, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor one hundred sixty dollars, which shall operate as a rental and cover the privilege of deferring the completion of a well for twelve months"—gives to the lessee the option either to pay the rental or complete a well prior to January 4, 1917, and the commencement of a well prior to January 4, 1917, is not a condition precedent, but the payment or tender of the rentals prior to January 4, 1917, will extend the lease for one year.

**4. New Trial—Verdict Contrary to Evidence.**

A motion for a new trial challenging the judgment of the trial court in a non-jury case on the grounds that it is not supported by the evidence searches the entire record, and where such judgment is clearly against the weight of the evidence, this court will set it aside.

**5. Oil and Gas—Lease—Cancellation—Sufficiency of Evidence.**

The evidence examined, and held, the judgment of the trial court is clearly against the weight of the evidence.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by Adolph Hauser and wife against B. A. Garber and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with instructions.

Garber & Kruse, for B. A. Garber.

McKeever & Moore, for F. D. Burns, J. R. Swank, and J. E. Burke.

W. J. Otjen and Geo. W. Buckner, for defendants in error.

McNEILL, J. This controversy arose by Hauser and his wife bringing suit against B. A. Garber et al., to cancel an oil and gas lease on one hundred and sixty acres of land located in Garfield county. At the time of bringing suit, the lease was owned by J. R. Swank and J. E. Burke. The oil and gas lease was dated January 4, 1916, and is what is commonly referred to as Producers Form 88. The grounds for setting aside the lease, as alleged in the petition, were, in substance:

First: That Hauser was sick at the time of executing the lease, and Garber represented he was going to get up a block of leases and would induce some one to drill a test well, not less than 3,500 feet deep, and if necessary to go 4,000 feet deep and to start a well within six months, and that the test well should not be over one and one-fourth miles from plaintiffs' residence. It is further alleged that the lease was to be placed in escrow until the test well was completed, and that the ownership was not to pass from Garber until the test well had been completed, and that Hauser and wife relied upon the representations of Garber, with the further allegation that the Hausers had never acknowledged the lease before a notary public, nor was any certificate of acknowledgment placed on the lease in their presence, nor were they ever asked to acknowledge the lease.

Second: That the lease had been altered by Garber, alleging that sometime after the execution of the lease, Garber returned to the premises of the Hausers and erased the signature of Hauser, and requested the plaintiff to again sign the lease, which the plaintiff refused to do, and thereafter said B. A. Garber placed the lease of record.

Third: That the dollar consideration mentioned in the lease had never been paid.

Fourth: That no well had ever been completed within a mile and a quarter of the plaintiffs' residence.

An amended petition was filed alleging that the lease was unilateral, lacking in mutuality, and held for speculation, and therefore void.

The defendants answered denying the allegations of the petition, setting out the fact that they had complied with all the terms of the lease and an agreement entered into between Hauser and Garber. The court made certain findings of fact and conclusions of law, although the findings of fact do not

correspond with the issues in the case, and the conclusions of law are more findings of fact than conclusions of law, but upon these findings of fact and conclusions of law, judgment was rendered in favor of the Hausers, and the defendants Swank and Burke appealed.

The parties will be referred to in the relative position they occupied in the court below.

For grounds of reversing the judgment of the trial court, the plaintiffs in error assign that the findings of fact made by the trial court are clearly against the weight of the evidence, and the judgment of the court is contrary to the law of the case.

The substance of the findings of fact that are material are:

First: That the material averments of plaintiff's petition were true.

Second: The court found that B. A. Garber had promised to drill a test well not over one and one-half miles distant from the Hausers' land, and that the lease was to be kept in escrow until said test well had been completed, and the ownership of the lease was not to pass from plaintiffs until the test well had been completed, and the sole consideration of the lease was the agreement on the part of Garber to put down a test well and the expectancy of the plaintiffs to have their premises developed for oil and gas. It was conceded at the time of the execution of the lease that there were no oil and gas wells within 40 miles of the leased premises. At the trial of the case, the defendants introduced a written contract which purported to be signed by Hauser, although Hauser denied the signing of the same. The contract was signed by numerous landowners and is as follows:

"We, the undersigned lessors, do hereby execute our lease to B. A. Garber, lessee, to be delivered by him to the Farmers State Bank of Garber, to remain in said bank in escrow and not to be recorded until the following conditions have been performed, in which event they shall be delivered to lessee:

"Until a contract with responsible parties shall have been entered into with the lessee embodying the following conditions, the performance of which shall be secured by a good and sufficient bond in the sum of not less than $5,000, which bond and contract shall be deposited in said bank:

"First: That the work preparatory to drilling a test well shall be commenced within six months from the date of our leases; and drilling commenced thirty days thereafter;

"Second: That the location of said test well shall be determined by a geologist after a thorough examination of the territory.

"Third: In the event said contract and bond shall not be so deposited, then said leases shall be returned to the lessors."

The trial court made no direct finding as to whether Hauser had signed the contract. Hauser admitted signing the lease and admitted that Mr. Garber had a contract as set out above with him at the time Hauser and wife signed the lease, but denied signing the contract. A photographic copy of the signature of Mr. Hauser to the contract appears in the case-made, together with the original lease which contained his signature. Mr. Garber and two other parties testified they were present at the time when said contract was signed by Hauser. An examination of the photographic signatures with the signatures on the lease and the evidence of the three witnesses clearly indicate that Mr. Hauser signed the contract, and a finding to the contrary would be clearly against the weight of the evidence. This being true, any oral evidence offered to contradict, or change or vary the terms of the written agreement would be inadmissible, under a long line of decisions of this court. Southard v. Arkansas Valley & W. Ry., 24 Okla. 408, 103 Pac. 750; McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524.

There was an allegation that the oral statements were false and fraudulently made, but no allegation that the statements were made to induce the plaintiff to execute the contract.

There was no contention that the terms of the written contract had not been complied with. This being true, there would be no evidence to support the finding of the court that the test well should be drilled within a mile and a half of the Hausers' farm or the finding that the lease should be held until the well was completed, as such evidence would contradict the written agreement, and the finding of the trial court upon these questions is clearly against the weight of the evidence.

The next finding of the court is in substance that the lease was never acknowledged by the Hausers before a notary public after the instrument was signed without the knowledge or authorization of the Hausers'. The Hausers admit that the notary public was present at the time they signed the lease in question. Mr. Garber and another party were present. Mr. Garber, the notary public, and the other witnesses all testified that the lease was acknowledged, but the Hausers denied the same. While the evidence in this case is conflicting, the certificate of the notary public is entitled to great weight, and in order to impeach or contradict the certificate a denial is not sufficient, nor is the evi-

dence sufficient to support the finding of the court when applying the rule laid down in the case of Dyal v. Norton, 47 Okla. 794, 150 Pac. 703. The evidence in this case is not sufficient to overcome the certificate of the notary public, and the finding of the court in this respect is clearly against the weight of the evidence.

The question as to whether the dollar consideration mentioned in the lease was paid or not would be immaterial in this action to cancel the lease, as there is no ground of fraud alleged; that the lease was secured by fraud in not paying the consideration mentioned in the lease would not be sufficient grounds to cancel the lease, but might support an action for money due and owing.

Fourth: The finding of the court that Garber represented that he would not transfer said lease to speculators, but that he would transfer the same to some oil company which would develop it. This finding also attempts to change and vary the terms of the written contract. It was agreed that Garber had transferred the lease, first to the Chanute Refining Company, who assigned it to the Garfield Oil company, who in turn transferred it to F. D. Burns, and it was thereafter transferred and is now owned by Swank and Burke. It was admitted that the parties to whom the lease was transferred had drilled and completed the test well in accordance with the terms of the written contract.

It was argued that the lease was in the hands of speculators, and therefore should be cancelled. The only evidence, as we recall, introduced at the trial of the case was that the parties who now owned the lease had never drilled an oil well or had any production. We doubt very much whether this question was properly presented by the pleadings, although perhaps referred to; but even if sufficient, this evidence would be insufficient to authorize the cancellation of the lease. When an oil and gas lease has been transferred to parties for a valuable consideration, and they have complied with all the conditions prescribed in the oil and gas lease, and on a trial to cancel the lease because it is held for speculation the only evidence introduced was that holders of the lease have no production, nor have ever drilled an oil well, that would not be sufficient, standing alone, to prove that the lease was being held for speculative purposes and entitled to cancellation.

It is next argued that the lease provides:

"If no well be completed on said land on or before the 4th day of January, 1917, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor $160, which shall operate as a rental covering the privilege of deferring the completion of the well for twelve months."

It must be remembered that this was a five-year lease, and it is argued that the commencement of a well prior to January 4, 1917, was a condition precedent to the paying of rental. This is no longer an open question in this court, but is settled by the rule announced in the case of Northwestern Oil and Gas. Co. v. Branine, 71 Oklahoma, 175 Pac. 533, and Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86.

The conclusions of law of the court were: ·

First: That the oil and gas lease in controversy herein between the parties was obtained from plaintiffs by misrepresentations and fraud and because said lease was never acknowledged, it never should have been permitted to have been placed of record; and that said lease is invalid and should be cancelled.

This conclusion of law is more a finding of fact than a conclusion of law. So far as it is a conclusion of law, it simply holds that the lease was never acknowledged, and therefore should not have been permitted to be placed upon record. But even admitting the lease was not acknowledged, this does not make the lease invalid.

Section 1154, Rev. Laws 1910, is as follows:

"Except as herein provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto, but no deed, mortgage, contract, bond, lease or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against persons unless acknowledged and recorded as herein provided."

"The court further finds that under the lease in question the true and sole consideration for said lease was the prospective royalties resulting from development of said premises, and that the defendants have not proceeded to drill or develop said lease, as by the lease required; and the court finds that it was optional with the lessors as to whether or not they shall accept the rental money for the further continuation of said lease; and that plaintiffs have elected to refuse the rental payment or delay money, that the plaintiffs are entitled to have said lease cancelled and removed as a cloud upon their land."

This conclusion is erroneous, and contrary to the rule announced in the case of Northwestern Oil & Gas Co. v. Branine and Rich v. Doneghey, supra.

It was orally argued that the placing of the certificate of acknowledgment of the notary public upon the lease was a material alteration that would invalidate the same. Without deciding this question, it is sufficient to say, as stated above, that the evidence offered that the acknowledgment was improperly placed upon the instrument was not sufficient to overcome the presumption of the notary public's certificate.

We therefore conclude that the findings of the trial court are clearly against the weight of the evidence and that the conclusions of law of the court are erroneous.

For the reasons stated, the judgment of the district court will be reversed and remanded with instructions to dismiss plaintiffs' petition and render judgment for the defendants.

OWEN, C. J., and PITCHFORD, HIGGINS, and RAINEY, JJ., concur.