## STIDHAM v. MOORE et al.

No. 13315—Opinion Filed April 22, 1924.

Rehearing Denied June 17, 1924.

**1. Homestead— Deeds — Execution — Adopting Signature — Acknowledgment — Ratification.**

Where husband and wife both take part in preliminary negotiations for the sale of their homestead, title to which is in the husband.

and the wife's signature to the deed is written by the husband with her knowledge, and she acknowledges the execution of such deed before a notary public, she thereby adopts such signature as her own. And where she thereafter received and applied a portion of the proceeds to her individual use, removed with her husband to another state, subsequently returned to this state and with him acquired a new homestead, which they occupied for a number of years, until a final separation between them, these facts constitute a ratification and estoppel which preclude her from asserting the invalidity of such deed after separation from her husband.

## 2. Deeds—Validity—Value of Notary's Certificate as Evidence—Impeachment.

A notary's certificate of acknowledgment to a deed regular on its face is strong evidence of the facts therein stated and its impeachment can be sustained only by clear, cogent, and convincing testimony. After the lapse of a number of years and after the death of the notary, the presumptive truth of his certificate is not overcome by the testimony alone of one named in such certificate as a grantor, where surrounding facts and circumstances are as consistent with the truth of the certificate as they are with the denials of the grantor.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by Nannie Stidham against A. S. Moore and wife to cancel a certain deed. Decree for defendants, and plaintiff brings error. Affirmed.

This case arose out of the following state of facts: In 1911 plaintiff and her husband, J. J. Stidham, were living upon a small tract of land adjoining the town of Alma; title to this property was in J. J. Stidham; they had acquired quite a lot of livestock and were desirous of going where they could have more pasturage and better opportunities for handling this stock profitably; that on July 21, 1911, a warranty deed to the property in controversy was acknowledged by J. J. Stidham and the plaintiff, Nannie Stidham, before A. H. Kennedy, a notary public, said deed purporting to convey and warrant the title of said property to the defendant, A. S. Moore; shortly after the execution and delivery of this deed, the Stidhams removed from Oklahoma to New Mexico until sometime in 1915 when they returned to Stephens county and purchased another place from a man named Helvey, on which they lived and made their home for several years, and until a separation occurred between them; after the divorce de-

cree was entered plaintiff commenced this action November 21, 1919, alleging that the property conveyed to A. S. Moore July 21, 1911, was the homestead of the Stidhams, and that the plaintiff, Nannie Stidham, did not sign the deed which was executed July 21, 1911; A. H. Kennedy, who took the acknowledgment, died sometime prior to the filing of this action.

The answer of the defendants consisted of general and special denials and a special plea of estoppel, and prayed that title be quieted in them.

A reply was filed to his answer and the case was tried October 19, 1921, resulting in a verdict in favor of the defendants and judgment upon such verdict. After unsuccessful motion for new trial, the plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

J. W. Marshall, for plaintiff in error.

Womack, Brown & Cund, for defendants in error.

Opinion by LOGSDON, C. Plaintiff states three propositions in her brief for the reversal of the judgment herein, as follows:

"(1) The court erred in submitting this case to the jury.

"(2) That there were no issues of fact under the evidence and the law properly applied thereto to submit to the jury, except the question of damages for use and occupation.

"(3) That the testimony shows the land in question to be a homestead, and that the wife did not subscribe her name to the deed which the defendant claims in the manner and form provided by law. That said deed is a nullity, and the court erred in so failing to find."

After stating these three propositions, plaintiff devotes her entire brief to a discussion of the question of homestead and to the citation of authorities upon the law of homestead. In the view of this case taken by this court, the question of homestead does not properly enter into a discussion of the case, but the question decisive of the issues raised is the execution and acknowledgment of the deed in question. The only testimony impeaching the validity of this deed of July 21, 1911, is the testimony of the plaintiff, who states that she did not sign the same nor authorize any one to sign it for her. She nowhere in her testimony denies the acknowledgment of the deed before A. H. Kennedy, the notary public, and his certificate attests the fact that she and her husband

both acknowledged the execution of the instrument on the day stated.

In contradiction of the denial of plaintiff that she executed the deed in question is the testimony of several witnesses with whom she talked prior to the execution of the deed in which she spoke of the contemplated trade or sale to the defendant, A. S. Moore. E. C. Norton, a merchant, testified that prior to the transaction of July 21, 1911, plaintiff owed him a merchandise account and told him that she would pay the account as soon as she and her husband closed the deal with Mr. Moore; that later she paid him $25 on the account and authorized him to collect the balance from Mr. Moore. T. J. Kennedy, another merchant, testified that about the date of the deed in question the plaintiff was in his place of business and stated to him, or in his presence, that she was trading out her last home. Defendant, A. S. Moore, testified that he paid $1,300 for the property, part of it in cash and the balance in trade, and that $100 worth of the consideration was taken up at his store by the plaintiff in person in the purchase of merchandise; that after plaintiff returned from New Mexico she told him that the deed in question was executed by her husband who signed her name also at her request and in her presence, and that she acknowledged the execution of such deed before Arthur Kennedy, the notary public. Photographic signatures of the plaintiff, admitted to be genuine, were introduced in evidence as standards of comparison, and it is easily discernible therefrom that the name of Nannie Stidham was not written on the deed in question by her, but that it is in her husband's handwriting. It is further shown, and not denied by plaintiff, that on the day the deed bears date plaintiff's husband went to the office of A. H. Kennedy, the notary public, and had him prepare the deed and go with him to his home for the purpose of taking the acknowledgment of himself and wife. Plaintiff admits that the notary came to the house with her husband, and that he had the deed with him for the purpose of having it executed.

Under these circumstances the question determinative of this litigation is whether the signature of Nannie Stidham to the deed in question, written by her husband, was adopted by her as her signature, and the instrument acknowledged by her to be her act and deed. As to the effect of the execution of an instrument in the manner that the one in question is shown to have been executed, this court, in Dyal v. Norton, 47 Okla. 794, 150 Pac. 703, speaking through Justice Hardy, said:

"We think that it cannot be successfully urged that the instruments complained of were not properly executed, if in fact the same were executed by the grantor before the officer taking the acknowledgment; for, by appearing before him and acknowledging the execution of the instrument, she adopted the signature thereon and the same was of as much binding force as if written by her in person."

In the fourth paragraph of the syllabus of this case the value of the certificate of acknowledgment as evidence of the facts therein stated is expressed in this language:

"The evidence to impeach a certificate of acknowledgment should be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false."

In Garber v. Hauser, 76 Okla. 292, 185 Pac. 436, this court, speaking through Justice McNeill, said:

"The next finding of the court is in substance that the lease was never acknowledged by the Hausers before a notary public after the instrument was signed without the knowledge or authorization of the Hausers. The Hausers admit that the notary public was present at the time they signed the lease in question. Mr. Garber and another party were present. Mr. Garber, the notary public, and the other witnesses all testified that the lease was acknowledged, but the Hausers deny the same. While the evidence in this case is conflicting, the certificate of the notary public is entitled to great weight and in order to impeach or contradict the certificate a denial is not sufficient, nor is the evidence sufficient to support the finding of the court when applying the rule laid down in the case of Dyal v. Norton, 47 Okla. 794, 150 Pac. 703. The evidence in this case is not sufficient to overcome the certificate of the notary public and the finding of the court in this respect is clearly against the weight of the evidence."

The second paragraph of the syllabus to this case reads as follows:

"The general rule is that the unsupported or uncorroborated testimony of the grantor is not sufficient to overcome the certificate of acknowledgment of the notary public to a conveyance regular on its face, especially where the certificate is supported by the testimony of the officer who took the acknowledgment, or by other competent evidence, but such testimony may be sufficient if, in view of the circumstances and probability of the particular case, it produced a condition amounting to a moral certainty that th certificate is false."

There is not only a lack of convincing testimony in this case that the certificate of the notary public is false, but there is an overwhelming preponderance of proof

that plaintiff and her husband sold the premises to A. S. Moore, and that the plaintiff knew of the transaction before it was completed, took part in its completion to the extent of acknowledging the execution of the deed, and thereafter ratified and confirmed the same by numerous acts and declarations on her part made with full knowledge of all the facts surrounding the transaction. In her denial of knowledge of the execution of the deed in question plaintiff states that the first knowledge she had that her husband had executed the deed and sgined her name thereto was after they reached New Mexico in 1911. Yet she made no complaint and began no proceedings to cancel the deed which she now claims was a forgery until November, 1919, after the notary public who took the acknowledgment was dead, and after she and her husband had been divorced and had sold and divided the proceeds of the homestead which they acquired after they returned from New Mexico in 1915. This claim does not commend itself to a court of equity.

Plaintiff assigned numerous specifications of error, but as before stated only three propositions are argued in her brief so that all others are deemed to have been abandoned. However, by reason of certain complaints in the specifications of error against the instructions of the court and the action of the court in refusing requested instructions, all of these have been carefully examined. The instructions given by the court fairly presented the law of the case to the jury, and in some respects were more favorable to the plaintiff that she had a right to expect. The requested instructions which were refused, where they stated legal principles applicable to the testimony, were fully covered by the instructions given by the court. There being ample evidence in the record to authorize the verdict returned by the jury in this case, and the judgment of the court being based upon such verdict, such judgment should be in all things affirmed.

By the Court: It is so ordered.