LE FLORE COUNTY NAT. BANK v. COOPER et al.

No. 15273—Opinion, Filed Feb. 17, 1925.

**Appeal and Error — Review — Equitable Actions—Fact Cases—Conflict of Evidence —Findings.**

In equitable actions, where the only error of law relied on for reversal is that the decree is against the clear weight of the evidence, and an examination of the evidence discloses that there is a conflict upon some of the issues of fact, but upon the main fact in the case, that of fraud, there is an entire absence of convincing proof from which fraud may be fairly inferred, the

findings of the trial court that no fraud is established are conclusive in this court, and a decree based on such findings will be affirmed.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, LeFlore County; E. F. Lester, Judge.

Action by the LeFlore County National Bank against J. W. Cooper, Katie Cooper, and Robert Cooper for cancellation of a deed. Decree for defendants, and plaintiff brings error. Affirmed.

This action was commenced August 21, 1923, by the LeFlore County National Bank filing its petition in the district court of LeFlore county, in which it was alleged, in substance, that J. W. Cooper and Katie Cooper had fraudulently conveyed to Robert Cooper certain lands described in plaintiff's petition for the purpose of defrauding plaintiff in the satisfaction of two certain judgments which it had recovered against J. W. Cooper, and praying for a cancellation of the deed conveying said lands.

Defendants J. W. Cooper and Katie Cooper filed their answers disclaiming any interest in the land described in plaintiff's petition. Robert Cooper filed his separate answer in which he denied generally and specifically each and every material allegation of plaintiff's petition, and affirmatively alleged that the deed in question was executed in good faith, and that he purchased said property for a valuable consideration, to wit, the sum of $800, and that such purchase by him was made long prior to the judgments held by the plaintiff against J. W. Cooper.

On the issues thus made the cause was tried to the court, resulting in a judgment and decree in favor of defendants and against the plaintiff. After unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

R. P. White and L. V. Reid, for plaintiff in error.

W. J. Hulsey, B. S. Null, and Lena Hulsey, for defendants in error.

Opinion by LOGSDON, C. Only two propositions are presented and argued in the briefs filed in this case, and since both propositions assail the decree of the trial court as being against the clear weight of the evidence, and since no other legal proposition is involved, these two may be properly considered together.

On the trial of the case plaintiff introduced J. W. Cooper as its principal witness, and an abstract of his testimony is taken from the brief of plaintiff as follows: That he lives now at Hartshorne, and formerly lived in LeFlore county, but moved to Wynnewood, Okla., in March, 1923, and is the father of the defendant, Robert Cooper, who is about 30 years of age. That he sold to Robert Cooper, the land in controversy for a consideration of $800. The $800 was paid in different ways and different payments; some of it was paid in farm work but witness does not remember the amount due for this, but states that it must have been $20 or $30. Witness bought 500 posts from defendant Robert Cooper at ten cents each, and also bought some cattle, but is unable to give the number, price, or the time of the transaction, but thinks it was in the year 1921. He could not approximate the price for the cattle. Witness does not know the amount due for well drilling, but approximates it at $50 or $60; does not remember the number of payments made in money, nor the amount so paid. The final settlement was made the last of February or first of March. Robert had made different payments, but he kept no account of it, and witness is unable to give the amount of any cash payment, or the amount of the final payment. All cash payments were made in money and none by check. The deed acknowledged before Cartledge was the second deed executed. Prior to this time deed was executed at Wynnewood, but was lost. The sale was complete about March 1, 1923. About May 17th afterwards, witness paid the first half of the taxes on the land in controversy, but explains that his son, the defendant, Robert Cooper, had requested him to do so sometime previous. The request to pay the taxes was made a month or so before the payment. Later, in the month of August, witness paid the second half of the taxes and explains this payment in the same way. Witness does not remember whether or not the taxes were paid by check signed by his wife, Katie Cooper, on a bank at Wynnewood, but that his wife, Katie Cooper, had a bank account at Wynnewood during this time, and as far as he knew this was the only bank account she ever had. The sale of the land was first discussed in the latter part of the year 1922, and was finally consummated about March 1, 1923. Robert Cooper made payments as he earned the money drilling

wells. Witness executed a mortgage on his home place in the spring of 1923. The home place and land conveyed to Robert was all the land owned by witness. The work for which credit was given on the purchase price of the land was done in 1920 or 1921. The cattle for which credit was given were purchased in 1920, 1921, or 1922, but witness does not remember the year nor the number of cattle, and assigns as a reason for his failure to pay for the cattle at the time, that negotiations for the sale of the land were in progress at the time. The largest sum paid on the land at any one time was about $250; this amount was paid in cash, and no person other than the witness and his son, the defendant, Robert Cooper, was present. Witness bought the land in 1888 for $400 and there was a house and barn on it in bad repair. Witness went with his son, Robert, in August, 1923, to John Irvin, a real estate agent, and tried to get a loan on the land in controversy for $2,000.

In addition to the testimony of the witness Cooper, plaintiff introduced its judgment in cause No. 4187 in the district court for $608.70 rendered August 16, 1923, and its judgment in cause No. 4231 in the same court for $2,937.50, rendered on the same day, both being against J. W. Cooper.

Plaintiff introduced three witnesses as to the value of the land covered by the deed which it sought to cancel. The value of the land as fixed by its witnesses varies from $10 per acre to $3,000 for the entire 220 acres. The testimony further shows that this is a hillside farm which has been in cultivation since 1889, and that the improvements are in a very bad condition.

In behalf of the defendants, Robert Cooper testified substantially as did his father, J. W. Cooper, in reference to the transactions between them leading up to the conveyance of the land and the execution of the deed. Mrs. Katie Cooper for the defendants corroborated her husband and stepson in so far as she had knowledge of the transactions. The testimony of the defendants further tended to show that the land did not exceed $1,000 in value.

It appears from the record that prior to the execution of the deed from J. W. Cooper and wife to Robert Cooper, dated March 5, 1923, the same grantors had executed a deed at Wynnewood to the grantee, which deed was lost before delivery. By deposition the notary public at Wynnewood who took the acknowledgment testified from memory that he took the acknowledgment some time in April or May, 1923, and this is urged by plaintiff as showing or tending to show that the deed of March 5, 1923, was in fact executed long after the date which it bears. In this connection it may be observed that the notary's certificate on the deed of March 5, 1923, bears the same date as the deed and no effort was made to impeach this certificate of the notary. In the case of Dyal v. Norton, 47 Okla. 794, 150 Pac. 703, in the fourth paragraph of the syllabus, this language is used:

"The evidence to impeach a certificate oc acknowledgment should be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false."

In the case of Garber v. Hauser, 76 Okla. 292, 185 Pac. 436, this language was used, which is very apropos to the situation presented in the instant case:

"While the evidence in this case is conflicting, the certificate of the notary public is entitled to great weight, and in order to impeach or contradict the certificate a denial is not sufficient. nor is the evidence sufficient to support the finding of the court when applying the rule laid down in the case of Dyal v. Norton, 47 Okla. 794, 150 Pac. 703. The evidence in this case is not sufficient to overcome the certificate of the notary public and the finding of the court in this respect is clearly against the weight of the evidence."

This is an equitable action, and in such cases, unless it can be said from the examination of the entire record that the decree of the trial court is clearly against the weight of the evidence, the findings of the trial court upon which its decree is based are conclusive in this court. In equitable actions fraud will not be presumed in the absence of evidence, facts, and circumstances from which fraud may be fairly inferred. The most that can be said of the evidence in this case is that the relations of the defendants are such as to render transactions between them suspicious where great inadequacy of consideration is shown. But it cannot be said in this case upon the conflicting testimony that the price of $800 paid for the land in controversy was so inadequate as to constitute within itself a badge of fraud or that it was so inadequate as to shock the conscience of a court of equity.

The trial court had all of the witnesses before it, was doubtless acquainted with the parties, and was better able to determine the weight and value of the testimony than is this court from a mere reading of the printed record. The trial court found that there was no competent evidence in the record from which fraud in the transaction could be fairly inferred, and found that the

price paid for the land was not grossly disproportionate to its value. It cannot be said that these findings of the trial court are clearly against the weight of the evidence.

For the reasons herein stated, the findings and decree of the trial court should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 898.