## SCOTT v. SCOTT.

No. 18021.    Opinion Filed May 1, 1928.

Rehearing Denied June 19, 1928.

(Syllabus.)

**1. Deeds—Test of Capacity to Make Deed.**

The test of capacity to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be erratic, irritable and changeable in his views; he even may be irrational upon some topics, but in the absence of fraud, he may still execute a valid deed.

**2. Acknowledgment—Effect as Adoption by Grantor of Signature to Deed Affixed by Another.**

Where the signature of the grantor has been affixed to a deed by another and the grantor, with full knowledge of the effect of said instrument, acknowledges the same before a notary public, he thereby adopts the signature thereon and the same is of as much binding force as if written by him.

**3. Wills—Husband and Wife as Forced Heirs of One-Third of Each Other's Property.**

Under section 11224, C. O. S. 1921, the husband and wife, while married, each become the forced heir of the other to the extent of one-third of the property owned by the other, which interest cannot be bequeathed by the owner from such heir.

**4. Homestead—Right of Surviving Spouse.**

Upon the death of the husband, his surviving wife, under section 1224, C. O. S. 1921, has the right to continue to use and occupy the homestead during her lifetime, and this right is hers individually, and not an interest in her husband's property, and, therefore, not subject to testamentary disposition by him.

**5. Same—Contracts—Contract of Surviving Wife Relinquishing Rights Held Invalid for Fraud, Duress, and Undue Influence.**

Where a husband, who has deeded property occupied as a homestead to his wife, dies, and the next day after the funeral a nephew commences an action to cancel said deed, and the following day the widow signs a contract whereby she agrees that judgment may be rendered canceling said deed and wherein she also relinquishes her one-third interest in said land as the forced heir of her husband and also relinquishes her homestead rights in said premises and surrenders her rights under a life insurance policy of her husband in which she is the beneficiary, and the evidence shows conclusively that her signature to said contract

was obtained by fraud, duress, and undue influence, and without any consideration, the contract is not binding on her and should be set aside.

### 6. Compromise and Settlement—Essentials of Valid Compromise.

A compromise is an agreement between two or more parties who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on. It is essential to a compromise that there be mutual concessions or yielding of opposing claims.

### 7. Appeal and Error—Review—Disposition of Equity Case Where Judgment Against Weight of Evidence.

In an equity case, this court will weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, the same will be reversed, with directions to render such judgment as should have been rendered.

### 8. Same.

The evidence examined, and held, the judgment of the trial court is clearly against the weight of the evidence.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by George B. Scott and George B. Scott, executor of the last will and testament of Benjamin Scott, deceased, against Lula M. Scott, to cancel and set aside a certain warranty deed. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with directions.

See, also, 111 Okla. 96, 238 Pac. 468.

A. L. Zinser and Simons, McKnight, Simons & Smith, for plaintiff in error.

H. Z. Wedgwood and George D. Wilson, for defendant in error.

MASON, V. C. J. The plaintiff in error was defendant and the defendant in error was plaintiff in the trial court, and for convenience, they will be so referred to herein.

In the early part of the year 1919, Benjamin Scott, who, at that time, was about 69 years of age, and the defendant, Lula M. Scott, who was 48 years of age, were married. At that time, Scott was the owner of certain property in the city of Enid, valued at from $12,000 to $15,000, and consisting of two lots of less than a quarter of an acre, upon which there was a large house, in which he and his wife resided until his death. Scott also had a life insurance policy for $1,000 which, immediately after his marriage, he had reissued, making his wife the beneficiary. About the same time, to wit, June 23, 1919, he executed a will in which he bequeathed all his property to his three nephews, George B. Scott and Bennie Scott, of Denver, Colo., and Benn Scott, of Ireland, subject to a life estate therein in favor of his wife, Lula M. Scott. Scott had no other relatives and owned no other property except that involved herein.

After said marriage, the Scotts operated a rooming house, or rented rooms in said property which they also used as a residence. It appears that Benjamin Scott was suffering from stomach trouble and was in poor health and unable to work and that Mrs. Scott did practically all the work in operating the rooming house. In August, 1922, Scott entered a hospital in Enid, where he remained about two weeks, after which he was removed to his home. A short time thereafter, and on the 9th day of September, 1922, Scott executed a deed conveying said property to his wife, Lula M. Scott. Thereafter, on the 27th day of September, 1922, Benjamin Scott died and his nephew, George B. Scott, came from Denver to Enid to attend the funeral, which was held on Sunday, October 1, 1922. The next morning after the funeral, while Mrs. Scott and George B. Scott were having breakfast together, she told him that her husband had deeded said property to her. He immediately consulted an attorney and commenced proceedings to probate the will, above referred to, and this action was commenced against Lula M. Scott to cancel said deed.

Plaintiff's petition alleges, in substance, that on September 9, 1922, the deceased, Benjamin Scott, was, by reason of old age and protracted illness, so weak of body and mind as to be incapable of understanding or comprehending the nature of a contract or deed; that on said date, and for some time prior thereto, the said deceased was under the control and domination of the defendant and that by means of fraud, undue influence, and coercion, said defendant caused the deed in question to be drawn and a purported signature of the deceased to be affixed thereto; that said deed was not the free and voluntary act of said deceased, but the result of fraud and undue influence exerted by the defendant over the deceased.

An amended petition was filed in which George B. Scott, in his individual capacity and as executor of the last will and testament of Benjamin Scott, deceased, was made plaintiff, in which it was further alleged that on October 4, 1922, and since the commencement of this action, the plaintiff and defendant had entered into a contract in writing, a copy of which was attached to

the petition, by the terms of which the defendant had agreed that the deed in question might be canceled in this suit and that the defendant would take under the terms of said will.

Defendant filed answer and counterclaim in which she denied all the allegations of the petition, except certain admissions. She admitted the execution and probate of the will of said deceased and that the plaintiff was the duly appointed, qualified, and acting executor thereof, and admitted she executed the agreement set up in the plaintiff's amended petition, but alleged that she was induced to execute the same by fraud and duress and that at the time she executed the same she was unable to understand or comprehend its terms. She further alleged that on the 9th day of September, 1922, the deceased executed and delivered to her a warranty deed conveying to her the property involved in this suit, and expressly denied that any advantage was taken of said Benjamin Scott, or that he was incompetent to transact business, or that said deed was obtained by fraud or duress or undue influence. It is further alleged that said real estate was the homestead of said Benjamin Scott and the defendant. Defendant also alleged that the contract set up in plaintiff's petition was obtained from her without any consideration therefor, and is, therefore, void, Defendant prayed that plaintiff's petition be dismissed, and the said contract be set aside and canceled, and that she be adjudged to be the owner of said real estate, and that her title thereto be quieted.

The cause was tried upon the issues thus formed, and judgment rendered for the defendant substantially as prayed for in her answer and cross-petition, from which the plaintiff appealed to this court, which reversed the judgment of the trial court because of the admission of certain evidence and the refusal to admit other evidence, and remanded the cause for a new trial. Scott v. Scott, 111 Okla. 96, 238 Pac. 468.

A second trial was had in the trial court before a different judge and judgment was rendered canceling defendant's deed and holding said contract between the parties to be valid, from which judgment the defendant has perfected this appeal.

For reversal, it is urged that the trial court erred in holding that said deed executed by Benjamin Scott was invalid and erred in holding that said contract between plaintiff and defendant was valid.

The judgment of the trial court does not disclose upon what grounds said deed was held invalid. Plaintiff relied upon several grounds. One was that the grantor was of old age and weak of body and mind. Old age of the grantor, however, is not sufficient to invalidate a deed, nor is the fact that he was enfeebled from bodily infirmities or weakened memory, where he fully comprehended the nature and effect of his acts. 18 Corpus Juris, 221.

In order to render a deed void because of the mental incapacity of the grantor, it should appear that the grantor was laboring under such a degree of mental infirmity as to make him incapable of understanding the nature of the act, the test being not merely that the grantor's mental powers were impaired, but whether he had sufficient capacity to understand, in a reasonable manner, the nature and effect of the act which he was doing. And where such capacity exists, mere weakness or infirmity of mind will not, in the absence of fraud or undue influence, invalidate the deed. 18 Corpus Juris, 218. Neither is a deed invalid for the reason that the grantor is in poor health, where he is able to understand the nature and effect of his act.

The test of capacity to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be erratic, irritable, and changeable in his views; he even may be irrational upon some topics, but, in the absence of fraud, he may still execute a valid deed.

The plaintiff herein relied principally upon the old age of Benjamin Scott; the fact that said deed was executed while he was confined to his bed with his final illness, and the fact that he failed to recognize old friends and acquaintances when they called on him at about the same time said deed was executed. The record, however, discloses that the failure to recognize such people was due to poor eyesight, and that after they spoke he invariably recognized them. The three physicians who attended him during his final illness, as well as several persons who witnessed the execution of said deed and friends and neighbors, testified that he was mentally capable and understood the nature of his act in executing said deed.

We have carefully read all the testimony in this case, and are convinced that nowhere in this entire record is there evidence reasonably tending to prove that he was not of a contracting mind or that he was

not of mental capacity sufficient to make the deed, or did not know the nature and effect of the business he was transacting. Neither is there any evidence to support plaintiff's allegation that said deed was obtained by fraud or undue influence.

Plaintiff also introduced evidence to prove that the signature on said deed was not the signature of Benjamin Scott. The record discloses that the grantor called an attorney, relative to executing a new will bequeathing said property to his wife, but that the attorney advised him that it would be cheaper to execute a deed conveying said property to his wife; that said attorney, at Scott's request, prepared the deed involved herein, and said attorney, as a witness, testified that Scott signed it in his presence. It appears that Scott's eyesight was so poor that he was unable to properly write his name, and it is the contention of plaintiff that after he had attempted so to do, another finished the signature. Be that as it may, it was not only prepared at his request, but the evidence discloses that the instrument was read and explained to Scott at the time he attempted to sign it, and that he acknowledged the instrument before the notary. By acknowledging the deed before the notary he adopted the signature thereon and the same is of as much binding force as if written by him in person. Dyal v. Norton, 47 Okla. 794, 150 Pac. 703; Stidham v. Moore, 100 Okla. 26, 227 Pac. 128; Garber v. Hauser, 76 Okla. 292, 185 Pac. 436.

It is next urged that the trial court erred in holding said contract to be valid. Such holding implied, at least, a finding that no fraud, duress, or undue influence was exercised over the defendant in securing said contract, and that the same was executed for a valuable consideration.

In discussing this assignment, it must be borne in mind that Benjamin Scott left no personal property and no real estate other than the property described in the deed in controversy. That is, his entire estate consisted of the two town lots and the house in controversy herein, which he and his wife used as a homestead from the date of their marriage until his death.

Under the provisions of section 11224, C. O. S. 1921, Benjamin Scott could not will more than two-thirds of his property away from his wife. She was his forced heir to one-third of said property. Hill v. Buckholts, 75 Okla. 196, 183 Pac. 42; York v. Trigg, 87 Okla. 214, 209 Pac. 417; McLaughlin v. Yingling, 90 Okla. 159, 213 Pac. 552.

In addition to this one-third interest, she had the right to use and occupy the homestead during her lifetime. Section 1224, C. O. S. 1921. This right was hers individually, and not an interest in the testator's property, and, therefore, not subject to testamentary disposition. Bacus v. Burns, 48 Okla. 285, 149 Pac. 1115; In re Cole's Estate, 85 Okla. 69, 205 Pac. 172; Pennington v. Woodner-McGaugh, 54 Okla. 110, 153 Pac. 875. It must also be remembered that several years before his death, Benjamin Scott had his insurance policy changed so as to make his wife, Lula M. Scott, the beneficiary.

Although the only relief sought by the plaintiff in said suit was the cancellation of the deed, yet the contract deprived the defendant of her homestead interest in the property and deprived her of her one-third interest in fee simple to which she was entitled as the forced heir of her husband, and also deprived her of the $1,000 life insurance.

It appears that, immediately after the funeral, the plaintiff insisted on a settlement of the estate; that the defendant had no relatives with whom to advise, and after talking with the plaintiff she decided to seek the advice of certain business men of the city of Enid and that the plaintiff accompained her when this was attempted. She made an appointment with an attorney who had formerly represented her, but she failed to see him because the plaintiff prevailed upon her to accompany him to his attorney's office, where said contract was entered into. The defendant testified that the plaintiff threatened to keep said property in litigation until it was all consumed in costs, unless she signed said contract; that she was in a highly nervous and distraught condition, suffering both physically and mentally, as a result of the long strain which she had gone through during the last sickness, death, and funeral of her husband, and did not understand the nature of the contract which was drawn. She also testified that the plaintiff promised to dismiss said action if she would sign said contract. The plaintiff and his attorney knew, or should have known, that she owned a one-third interest in the property that had been owned by her husband and they should have so advised her instead of suggesting that she sign said contract and take under the provisions of the will, whereby she only secured a life estate in said property. These acts, in our opinion, constituted fraud on the defendant, and the plaintiff benefited by such fraud, and such contract should not be permitted to stand. The property of widows and children is too often taken away from them by

persons who pretend to act in the capacity of friends, protectors, and advisors, but who are working in their own interest or in the interest of someone else.

This record discloses the grossest kind of fraud, duress, and undue influence on behalf of the plaintiff. It is apparent that the defendant did not understand the terms of the contract, because by it she surrendered valuable property rights which the law guaranteed to her and which were not involved in the suit then pending.

It is the contention of the plaintiff that this contract was a compromise and settlement of said lawsuit, but we cannot agree with this contention. A compromise is an agreement between two or more parties who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on. It is essential to a compromise that there be mutual concessions or yielding of opposing claims. 12 Corpus Juris, 314. In the instant case, the plaintiff yielded nothing whatever, but the defendant surrendered valuable property rights. For the same reason, said contract must be held to be void for the want of consideration.

The plaintiff herein seeks the aid of equity to cancel a deed, but the record discloses such greed, fraud, duress, and undue influence in an attempt to filch a widow woman, out of what both her husband and the law gave her that we cannot say he comes into court with clean hands, and equity cannot permit such a contract to stand.

The judgment of the trial court is contrary to the clear weight of the evidence, and the same is reversed, and the case is remanded, with directions to render judgment for the defendant.

HARRISON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 18 C. J. p. 218, §131; p. 222, §§134, 135; 8 R. C. L. p. 946; 2 R. C. L. Supp. p. 695; 4 R. C. L. Supp. p. 584. (2) 1 C. J. p. 786, §82: 1 R. C. L. p. 260. (3) 40 Cyc. pp. 1050, 1057. (4) 29 C. J. p. 994, §470; anno. L. R. A. 1917C, 356, 13 R. C. L. p. 665. (5) 29 C. J. p. 998, §481. (6) 12 C. J. p. 314, §1. (7) 4 C. J. p. 1192, §3230; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 90: 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 83. (8) 4 C. J. p. 902, §2871.