GILBERT et al. v. NEAL et ux.

No. 34313.   June 3, 1952.

*245 P. 2d 86.*

Champion, Fischl & Champion, Ardmore, for plaintiffs in error.

Curtis & Blanton, Pauls Valley, for defendants in error.

DAVISON, J. This is a suit in equity, whereby the plaintiffs seek to cancel, set aside and quiet title against a certain warranty deed from T. R. Gilbert and his wife, S. H. Gilbert, to L. S. Neal, dated September 27, 1943, covering and embracing some 110 acres of land in Garvin county, Oklahoma. Mrs. Gilbert having died, the petition was filed by T. R. Gilbert and his seven living children, as plaintiffs, against L. S. Neal and his wife, as defendants, upon the theory that the property was the homestead of the grantors, requiring execution by both husband and wife of any valid conveyance and that Mrs. Gilbert was mentally incapable of performing such act. The parties will be referred to as they appeared in the trial court.

The plaintiffs have appealed from a judgment denying them the relief sought. Plaintiffs' position in this court, although presented as three propositions, is that the judgment is not supported by the evidence.

The record discloses that, in 1939, after the Gilberts had owned and resided on the property as a homestead for some 20 years, Mrs. Gilbert was in a very bad condition of health, suffering for many years from diabetes which had necessitated the amputation of one of her legs in 1927. After the amputation she performed many of her household chores but her health continued to decline. In 1939, Mr. Gilbert rented the lands here involved to the defendant, Neal, and took his wife to San Antonio, Texas, where they bought a house and small acreage. They lived there something less than a year before moving back to the old home place in Garvin county. In the winter of 1941-1942 they returned to their San Antonio place and, after a few months, Mrs. Gilbert had her other leg amputated. They then sold the place there and moved to Gladewater, Texas, near the home of one of the daughters who could look after and care for her mother. There, Mr. Gilbert bought a small three room house upon a lot which he rented and he and his wife lived there until her death in January, 1945.

The long illness of Mrs. Gilbert caused a heavy financial burden for her husband. Consequently, he attempted to sell, to several persons, the Garvin county farm which is the land here in-

volved. About the first of September, 1943, the defendant, L. S. Neal, who was then living in California, corresponded with Mr. Gilbert, who was then living in Gladewater, Texas, about purchasing the property. This correspondence culminated in a meeting of the parties in Pauls Valley, Oklahoma, where, after several days of negotiating, a sale was agreed upon whereby Mr. Neal was to pay $1,500 in cash and assume and pay a mortgage indebtedness of about $1,300. The contract was made and the deed prepared, which was to be executed by Mr. and Mrs. Gilbert at their home in Texas. The cash payment was deposited in Pauls Valley, awaiting the execution and delivery of the deed, and Mr. Neal returned to California. Mr. Gilbert returned to Texas. Soon thereafter the deed was executed and returned to Oklahoma and the transaction completed.

The testimony is in sharp conflict concerning facts and conditions surrounding the execution and acknowledgment of the deed. Those present at the time were Mr. and Mrs. Gilbert, two of their daughters, a step-son of one of the daughters and the notary public who took the acknowledgment. The notary public testified that he was called to the Gilbert home on the 28th day of September, 1943. At that time, he was superintendent of the public school of Union Grove, Upshey county, Texas, which was located about 300 yards from the Gilbert residence. He had known the Gilberts about 18 months. Mrs. Gilbert was in a wheel chair. He was handed the deed which he looked over and then asked Mr. Gilbert to leave the room after signing it. He then explained the deed to Mrs. Gilbert and asked her if it was her desire to sign it. She replied that it was and that she would hold the pen while her daughter signed her name. He then explained again what the deed contained and the daughter signed her mother's name while Mrs. Gilbert held the pen. There was nothing said or done which indicated to him that Mrs. Gilbert was other than a sane mentally normal person.

The testimony of the members of the family was to the effect that Mrs. Gilbert had no conception of what the deed was; that no one explained to her about it, and that, if they had, she could not have understood what it was or meant; that for the five or six years just preceding, Mrs. Gilbert had been in such condition that she didn't know what was going on; that one of the daughters signed her mother's name without her knowledge and that her mother in no way touched the pen nor acknowledged the signature or execution of the deed. The testimony of other witnesses as to the general mental condition of Mrs. Gilbert at various other times is in a similar degree of conflict and it would serve no purpose to delineate it in detail.

There is no suggestion of failure of consideration or fraud on the part of the defendants, in either the pleadings or the evidence. They moved onto the property in 1944 and at all times, subsequently, occupied it as a home. They rebuilt the house inside and out, put a new roof and brick siding on it, built a hay shed, a smoke house, a wash house, a brooder house, a barn and corrals, dug and finished a cellar, put down two wells, fenced the property, had terraces put in and constructed a levee.

No complaint was made and no indication of dissatisfaction was shown to the defendants by any of the plaintiffs from the time the deed was returned in September, 1943, until the filing of the petition herein on March 1, 1947, at which time the property had materially increased in value because of oil development nearby. Defendants relied upon three propositions as to why plaintiffs were not entitled to recover, namely, that Mrs. Gilbert had sufficient mental capacity to execute the deed; that the property had been abandoned as a homestead and a conveyance thereof need not have been executed by her; and that plaintiffs were

guilty of laches in delaying the institution of suit.

A pronouncement of the law applicable in such a situation as here under consideration was recently made by this court in the case of Duncan v. Burkdoll, 204 Okla. 574, 232 P. 2d 151, wherein it was held that:

"In an action to cancel a deed conveying real property for lack of mental capacity on the part of the maker, the presumption is that the maker of the deed had mental capacity to execute the same. The burden of proof is upon the party attacking the validity of the deed."

In many ways, the facts in the reported case parallel those in the case before us. The fact that Mrs. Gilbert's signature was written by another makes no difference if the same was properly acknowledged. The acknowledgment would be an adoption of the signature making it of as much binding force as if written by her in person. Scott v. Scott, 131 Okla. 144, 268 P. 245.

The entire record has been carefully examined. Nothing therein discloses that the judgment is against the clear weight of the evidence. As was said in the case of Yarbrough v. Bellamy, 197 Okla. 493, 172 P. 2d 801:

"An action to cancel a deed is one of equitable cognizance, and the judgment in such an action will not be disturbed on appeal unless it is clearly against the weight of the evidence."

Having come to this conclusion, it is unnecessary for us to determine the other questions presented.

The judgment is affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur.