Clara WATSON, Executrix of the Estate of Aaron Johnson, Deceased, Plaintiff in Error,

v.

Frank JOHNSON and Leola Johnson, Defendants in Error.

No. 40744.

Supreme Court of Oklahoma.

July 13, 1965.

Rehearing Denied Jan. 18, 1966.

Second Petition for Rehearing Denied Feb. 28, 1966.

M. C. Spradling, Tulsa, for plaintiff in error.

Paul E. Simmons, Broken Arrow, for defendants in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court as they did in the lower court. They will be referred to by their trial court designation or by name.

This is an appeal by Clara Watson, Excutrix of the Estate of Aaron Johnson, deceased (plaintiff below) from a judgment in favor of Frank Johnson and Leola Johnson (defendants below), denying plaintiff any relief in her action for cancellation of a warranty deed. Trial of the cause was to the court. The deed in question was from · Aaron Johnson to the defendants (husband and wife) and conveyed property in Tulsa, Oklahoma, to them.

Plaintiff sought cancellation of the deed on the grounds that defendants wrongfully· and unlawfully acquired the title from deceased when he was wholly incompetent to transact business because old age, blindness, and deterioration of his physical and mental faculties, had rendered him incapable of comprehending the effect of his act. It was further alleged that deceased did not sign the deed and that his signature thereto was forged by defendants, and that no consideration was given for the deed.

Defendants filed an answer denying any wrongdoing on their part, and a cross-petition alleging they were owners of the property by virtue of the deed and praying that title be quieted in them. During the course of the trial the defendants dismissed their cross-petition.

The deed from Aaron Johnson to the defendants is dated and acknowledged December 16, 1961, and appears to be regular on its face. Deceased died December 24, 1961, when he was about 80 years old. The defendant Frank Johnson is a nephew of deceased and plaintiff Clara Watson is deceased's former wife. On February 20, 1953, subsequent to dissolution of their marriage, Aaron Johnson executed his will wherein he devised all of his property to his former wife Clara Watson. This accounts for her interest in bringing the present suit.

The record reflects that for about 4 or 5 years (and probably more) before his death in 1961, the deceased was in poor and declining health and that his eyesight was failing, so that at the time of the execution of the deed he had little, if any, vision left; that his income was a social security check and possibly some rental from the property, and for about 30 months to 3 years he stayed at the home of the defendants. The defendant Frank Johnson testified that he agreed to take care of the deceased in return for the deed and both defendants testified in effect that it was understood or at least contemplated by them (the defendants) that the deed would be a joint survivorship deed whereby the survivor, including Aaron Johnson as a possible survivor, would finally have title to the property. In April, 1960, Leola went to an attorney who prepared the deed whereby the deceased (a single man) would convey the property to the defendants as joint tenants, and the survivor of defendants to take the entire title. The record contains no factual explanation as to why the deed was prepared by the attorney in this form. The deceased was not present. Deceased did not immediately execute the deed, giving as his reason (according to Frank) that he was not feeling too good.

The record reflects that deceased was in a hospital several weeks prior to November 18, 1961, and was then removed, by Clara Watson, to a nursing home. While there, he expressed a desire to sign the deed, and when the notary public declined to come to the nursing home the operator thereof (in her car) took deceased and the defendants to the notary and the execution of the previously prepared deed took place in the vehicle. The notary's version as to what then transpired was that she observed Aaron Johnson was an elderly man and was "real old;" and "would not say entirely blind," and she "asked him then if he knew that he was notarizing this deed to his property and he said yes, that he did," and that she asked him if he knew what he was doing when he signed "this particular deed;" that he said he had not signed the deed in April, 1960, because he "had just put it off" and "just hadn't taken care of it." The notary further testified concerning deceased, "he could not see well enough to hit the line and tell where he was writing," and he asked Leola to steady his hand, and Leola held his hand while he was signing his name, and that she (the notary) changed the date in the deed to December 16, 1961, and executed the acknowledgment. The notary testified, and there was no contrary showing, that she had no interest in the transaction.

There is also testimony in the record on behalf of plaintiff that deceased was blind and that his physical and mental condition while in the nursing home was such that he was incapable of intelligent action. Samples of deceased's admitted signature were also shown as varying from the signature on the deed and that the latter signature resembled some admittedly written by Leola Johnson. A handwriting expert testified the signature on the deed was not that of deceased.

Plaintiff contends the act of Leola Johnson, a grantee in the deed, in holding deceased's hand while he held the pen rendered the deed void and that, since the signature was not witnessed by two witnesses, there is no authority for the adoption by deceased of his signature.

We understand plaintiff's argument to be that deceased's signature amounted to execution of the deed by mark and therefore required compliance with 16 O.S.1961, § 34, which provides in part as follows:

"When real estate is conveyed or encumbered by an instrument in writing by a person who cannot write his name, he shall execute the same by his mark, and his name shall be written near such mark by one of two persons who saw such mark made, who shall write their names on such instrument as witnesses. * * *"

However, the record shows that deceased could write his name in 1953 when he executed his will and there is evidence from which it may be assumed that he endorsed a social security check in September, 1961. From the testimony of the notary it appears that he did undertake, with assistance, to sign his name to the deed.

In 80 C.J.S. Signatures § 5, p. 1291, it is stated:

"A signature may be made by the hand of the person whose signature it purports to be, either by his own unaided efforts, or with the aid of another, as, for example, where such other, with the signer's consent, guides the latter's pen or pencil. Where the maker of an instrument in signing his name is assisted by another person guiding or steadying his hand, the signature thus made is the act of the maker and not the act of the person assisting him."

Under this rule of law the signature of deceased was his own. The notary, after questioning deceased, as above set forth, regarded the signature as that of the deceased and executed the acknowledgment in regular form. It is pointed out that in both the discussion preceding execution of the deed and in the actual signing and acknowledgment there was no mention of or attempt to effect the signing by mark

or by the acknowledgment appropriate to such mode of signing. Both signing and acknowledgment appear regular.

Plaintiff cites Kemper v. Todd, 123 Okl. 209, 255 P. 701, and Wagner v. Davidson, 127 Okl. 199, 260 P. 37, and other similar cases, for the proposition that failure to comply with the provisions of 16 O.S.1961, § 34, in the execution of a conveyance renders the instrument ineffective. These decisions are not applicable to the present situation. In the Kemper case the grantor executed the deed by his mark. There were no subscribing witnesses and therefore a failure to comply with the statute. In the Wagner case a distinguishing feature was that there was the equivalent of no acknowledgment at all.

In the present case the deceased elected to sign his name to the deed and there was no attempt to execute the deed by mark. There was also a proper acknowledgment by the notary after the notary had made inquiry of deceased as to his knowledge, desire and intent to execute the conveyance.

■ Under the circumstances before us any contention that the signing of deceased's name was not the act of deceased is without merit. The deceased asked Leola to steady his hand and she held his hand. This court has held that the fact that a grantor's signature was written by another would make no difference as to its validity if it was properly acknowledged, since it would be thereby adopted and given as much binding force as if written by grantor. Gilbert v. Neal, 206 Okl. 559, 245 P.2d 86. See Scott v. Scott, 131 Okl. 144, 268 P. 245, and Jackson v. Central Commercial Oil Co., 199 Okl. 177, 184 P.2d 974. In Stidham v. Moore, 100 Okl. 26, 227 P. 128, the wife's name was signed by the husband, and we held that her acknowledgment was an adoption of such signature, and that the deed conveying the homestead was valid.

■ Plaintiff also urges the deed is invalid because there was no meeting of the minds of deceased and defendants as to the character of the deed the deceased was to give to defendants. Plaintiff has reference to the testimony narrated above regarding the inclusion of deceased in the survivorship provisions of the deed. It appears that this discussion took place some time before execution of the deed and probably in connection with Frank Johnson's agreement to take care of deceased. The fact remains that the deed as prepared did convey the property to defendants as joint tenants and the notary inquired of deceased whether he desired to execute this "particular" deed.

■ In Anchor Stone & Material Co. v. Pollok, Okl., 344 P.2d 559, it is stated:

"In the absence of fraud or mistake a deed executed and delivered in due and proper form constitutes the complete contract between the parties, and merges all oral negotiations up to the time of delivery."

From our examination of the record we cannot say that the evidence proved fraud or mistake.

■ In Gilbert v. Neal, supra, we stated:

"In an action to cancel a deed conveying real property for lack of mental capacity on the part of the maker, the presumption is that the maker of the deed had mental capacity to execute the same. The burden of proof is upon the party attacking the validity of the deed."

■ And in Anselman v. Oklahoma City University, 197 Okl. 529, 172 P.2d 782, it is stated:

"A contract and deed are not invalid merely because one of the parties to same may be enfeebled by old age and/or disease in such a way that some of her mental processes are affected, if at the time of doing so, she understands the nature and effect of her execution of said instruments."

An action to cancel a deed is one of equitable cognizance, and the judgment in such an action will not be disturbed on appeal unless it is clearly against the weight of the evidence. Gilbert v. Neal, supra.

Plaintiff further contends that the trial court erred in permitting the defendants to testify concerning conversations and transactions they had with deceased leading up to, and including, the execution and delivery of the deed.

Plaintiff relies on 12 O.S.1961, § 384, and invokes that part thereof which provides:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *."

Plaintiff argues that the defendants are in the same position as a plaintiff asserting a cause of action acquired immediately from the decedent and against his estate. This same or similar contention was presented in Livingston v. Bonham, Okl., 308 P.2d 657, in which an administratrix brought suit against a party to a transaction with deceased, to recover an oil bonus alleged to be the property of the estate, and wrongfully retained by such party. Therein we said that the party defendant was competent to testify as to the oral agreement between him and the deceased that defendant was to receive the bonus, stating:

"The inhibition provided for under 12 O.S.1951, § 384 is leveled against persons asserting a cause of action, the title to which was acquired immediately from a deceased person, and not against persons asserting a defense to such cause of action."

See also In re Fullerton's Estate, Okl., 375 P.2d 933, and Berry v. Janeway, 206 Okl. 555, 245 P.2d 71.

In the present case the defendants are not asserting a cause of action. They had none to assert. Title to the property was in the defendants. They had no claim or demand against the estate, nor were they attempting to enforce one. Defendants were competent to testify as to their transaction with deceased in defense against the plaintiff's action to cancel the deed.

It is our conclusion the judgment of the lower court is not clearly against the weight of the evidence and that no error of law has been shown to exist.

Affirmed.