In re Estate of Charles Johnson, Deceased, Eliza Johnson v. Albert P. Johnson, Executor, Appellant.

**Estates of decedents:** ALLOWANCE TO WIDOW: ANTENUPTIAL CONTRACT. The allowance to the widow for her support during the year following the death of her husband is a part of the expense of administering the estate, and she can not cut off her right thereto by any form of antenuptial contract, provided the court finds such an allowance proper at the time it is applied for.

*Appeal from Keokuk District Court.*—Hon. W. G. Clements, Judge.

Wednesday, February 14, 1912.

Proceedings in the lower court with reference to the allowance of a claim of Eliza Johnson, widow of deceased, of $300 for support during the year following the death of deceased, resulted in an order for such an allowance in the sum of $250. The executor appeals.—*Affirmed*.

*Stockman & Baker,* for appellant.

*C. M. Brown* and *D. W. Hamilton,* for appellee.

McCLAIN, C. J.—Prior to the intermarriage of Charles A. Johnson, now deceased, whose estate is under administration, and Eliza Roberts, who survives decedent as his widow, they entered into an antenuptial contract, in which each agreed to relinquish all rights that either might have in the property, both real and personal, of the other; the recital of relinquishment on the part of the intended wife being as follows:

In consideration of which and the said marriage the second party agrees to, and does in like manner, relinquish any and all claims and demands of whatsoever manner, sort, or description which she may at any future time have by reason of the said marriage and her being the wife of the first party, against the said first party, his property or his estate, except only as in contract hereinafter specifically set out; the above agreement to include and cover all claims for dower, support, or maintenance out of the estate of the first party. In the event that the first party shall die during the continuance of the said marriage relation between the parties hereto and the second party survive him, then the second party shall be entitled to the one-third part of the net value of the estate left by first party provided that the said net value of the estate shall not exceed the sum of twenty-one hundred dollars. In the event that the net value of the said estate shall exceed twenty-one hundred dollars, then and in that case second party shall become entitled to the sum of seven hundred dollars out of the same, and no more. The above exception, that is to say, the portion of the first party's property that the second party shall be entitled to out of his estate, is given under the express condition that the second party will in no wise interfere with the first party selling or mortgaging his property, and that she will sign all deeds and mortgages said first party may ask to be signed, and first party will likewise agree to sign deeds or mortgages for second party.

It is conceded for appellant that in a case recently decided in this court—*In re Estate of Miller,* 143 Iowa, 120—it was held that an antenuptial contract cutting off

all rights of the wife surviving her husband in his estate
does not defeat her right to the allowance authorized by
Code, section 3314, provided the court shall find such al-
lowance to be proper under the circumstances.   Counsel
for appellant seek to distinguish the present case from the
one just cited on the ground that in the antenuptial con-
tract now before us the intended wife specifically relin-
quished all claims against her prospective husband's prop-
erty or estate, with the specification that such relinquish-
ment should include and cover "all claims for dower, sup-
port and maintenance out of the estate" of her husband.
We think no such distinction can properly be made.   In
that case it was held that the allowance provided for by
statute was not to be made out of the estate of the hus-
band, but out of property of which he died seised, and
that the amount of his estate for distribution could only
be determined after costs of administration had been de-
ducted from his property, and that the allowance to the
widow is one of the expenses of administration.   It is
there said that the allowance authorized to be made to
widow and children does not relate in any sense to an in-
terest in the property of the husband; and by quotation
from *In re Estate of Peet,* 79 Iowa, 185, it is said that
the provisions of the statute in this respect embrace inter-
ests of the public as well as of the wife and children.   In
the case of *Phelps v. Phelps,* 72 Ill. 545 (22 Am. Rep.
149), cited with approval in the *Miller* case, this language
is used:

The right of the wife and minor children to support
during marriage is not an interest, strictly speaking, in
the property of her husband.   It is a benefit arising out
of the marital relation by implication of law. . . . It
comes within no definition of property.   It is a benefit
created in their favor by positive law, and adopted for
reasons deemed wise and politic. . . . We are at a
loss to understand how this humane provision of law for
the family of a deceased party can be affected by an ante-

nuptial contract, however broad and comprehensive its terms. . . . It is undeniable law that a party may waive the advantage of a statute intended for his sole benefit, but there are grave reasons why a law enacted from public considerations should not be abrogated by mere private agreement. The statute we are considering is of this character. It was intended to throw around the persons named that protection they are unable, in their helplessness, to procure for themselves. This is not a matter of mere private concern. It would be in contravention of the policy of this enactment to permit a party, by an antenuptial contract, to relieve his estate altogether from the maintenance of his widow and his children, when they could no longer sustain themselves.

We now reach the conclusion that by no provision in an antenuptial contract, no matter how fair and reasonable it may be in itself in view of circumstances of the parties, can the prospective wife relinquish or cut herself off from the right to an allowance for support under the statute, provided the courts finds such allowance to be a proper one when applied for. Of course, the circumstances, including the provisions of the contract itself, may be taken into account in determining whether an allowance should be made; but, if in the particular case the court finds an allowance to be proper, no relinquishment or waiver in the antenuptial contract can be relied upon to defeat the right to it.

The order of the trial court is *affirmed*.