IN THE MATTER OF THE ESTATE OF CARL FREDERICK
UKER, Deceased.

**Husband and wife:** ANTENUPTIAL CONTRACT: VALIDITY: EVIDENCE.
1 The evidence in this action is held to show that the antenuptial contract involved was signed and acknowledged by the parties with an understanding of its contents and that the same embodies the agreement of the parties and is valid.

**Same:** DELIVERY OF CONTRACT. It is not essential to the validity of
2 an antenuptial contract that it be delivered to either party in any formal sense; but where it was either handed to one of the parties after execution, or was retained by the attorney who drew it, and was subsequently recorded there was a sufficient delivery.

**Same:** REASONABLENESS OF CONTRACT: ENFORCEMENT. An antenup-
3 tial contract fairly and honestly made is entitled to the same

consideration in its enforcement as any other contract.  The contract in the instant case when considered in the light of the circumstances of the parties, their respective families and financial situation, was fair and reasonable and should be enforced.

**Same:** DECEIT.  The fact that one of the parties was afflicted with a fatal malady at the time of the marriage, which the other was not apprised of, was not such deceit as would invalidate the antenuptial agreement.

**Same:** ALLOWANCE TO SURVIVING WIDOW.  An antenuptial contract is not necessarily a bar to the allowance of a year's support on the ·death of the husband, but this is a matter within the discretion of the court in view of all the circumstances of the parties at that time, when considered in connection with the contract.

*Appeal from Floyd District Court.*—HON. J. J. CLARK, Judge.

THURSDAY, MARCH 14, 1912.

THIS controversy had its origin in a probate proceeding.  It is a contest between the widow on the one hand, and the heirs at law on the other, and involves the validity of an antenuptial contract.  The trial court sustained the validity of such contract.  The widow, Isabella Uker, has appealed.  The appellees are the children of the decedent by a former marriage.—*Modified* and *affirmed.*

*J. H. Lloyd, W. M. Brouillard,* and *C. S. Moore,* for appellant.

*J. C. Campbell,* for appellees.

EVANS, J.—Appellant was married to the decedent on December 25, 1907.  The decedent died September 14, 1910, and the appellant was duly appointed as administratrix of the estate.  She filed application to set aside her exempt property and her distributive share in the estate and for a year's support.  The appellees resisted these

applications, and set up an alleged antenuptial contract entered into by the appellant and the decedent on December 23, 1907. This contract was legal in form, and purported to make full provision for the appellant in case she outlived the decedent, and, in consideration thereof, she relinquished her statutory rights. The provision made for her was that she should receive $500 and a life estate in the homestead property, consisting of a house and outbuildings, and about five acres of ground. A note of $500 was executed by the decedent and delivered. to her, which became due in two years after date, and which bore eight percent interest after due. The contract contains the following relinquishment on the part of the appellant:

The said Isabella Patterson hereby relinquishes all other and further rights whatsoever in and to the property of said Carl F. Uker hereby relinquishing especially all dower right, right to distributive share, right to exemption right, right to allowance for support, together with all other statutory or common-law rights of whatsoever nature or character which she might or could have except for this marriage settlement, the intention and understanding being that, in consideration of said sum of five hundred dollars and use of said real property above described during her natural life after the death of said Carl F. Uker, the said Isabella Patterson will make no further or other claims against his estate or property whatsoever, either· as widow or otherwise, and it is understood by and between the parties hereto that all other property owned by said Carl F. Uker at the time of his death shall go and pass to the same persons and in the same rights that it would have passed and gone had said Carl F. Uker outlived said Isabella Patterson.

The appellant filed a pleading in the form of a reply, wherein she denied that she ever executed the alleged antenuptial contract. She denied, also, that it was ever delivered, and averred that it did not·express the real agreement between the parties, and that she did not know its contents, and that it was unjust and unfair, and that it

never became effective between the parties. Some question has arisen in the argument as to whether the case should be tried here as an equitable proceeding. The appellees contend that it was tried below as a proceeding at law. The appellant has argued it here both upon errors assigned and upon its merits as an equitable proceeding. We will dispose of the case on its merits.

The trial court sustained the contract. We find ourselves in harmony with that holding. The contract was signed and acknowledged by both parties at the office of P. W. Burr, an attorney at Charles City. They went there for that purpose. Decedent was a German, and it does not affirmatively appear whether he could read English, but it does appear that he understood and talked English well. There is no claim that the appellant was unable to read English. On the contrary, she testified to her own ability in that respect. The variance claimed between the written contract and the previous verbal understanding is that the appellant was to have not only the life use of the home property, but was to have all the personal property upon the place. Most of this property consisted of household goods and exempt property. It is urged that this provision was omitted from the contract by mistake. The evidence to support this claim consists largely in alleged statements made by the decedent to many persons at different times reciting the extent of his gift to his wife. These alleged statements were made after the marriage. They were made for the most part to persons whose association with the appellant is and was more or less close. The frequency of these recitals on the part of the decedent is not reassuring as to the accuracy of the testimony. In any event, they were general and indefinite. The appellant herself testified on the subject, and was permitted to testify freely and without objection as to her transactions with the decedent. All that she testified to at this point is as fol-

1. HUSBAND AND WIFE: antenuptial contract: validity: evidence.

lows: "The contract as read to me and explained to me since the time of the death of Mr. Uker does not express my agreement with Mr. Uker." She did not testify in what respect the written contract departs from the verbal understanding. She does not in her pleading ask to reform the contract. She simply claims the right to annul it entirely because of the alleged variance of its contents from the previous oral agreement.

On the question of delivery, it is urged that the contract was never delivered to her. It was not necessary that such a contract should be delivered in any formal sense to either party. It could have been properly held by either party thereto or by a third person in behalf of both. In this case the contract after it was executed was either handed to the decedent with the advice of the attorney that it be recorded, or else it was left with the attorney for that purpose. Which course was pursued is uncertain under the evidence. It was actually recorded on December 24, 1907. It is also certain that it was taken to the recorder's office by the clerk of the attorney who prepared it. Whichever course was pursued, it was ample to constitute a delivery.

*2. SAME: delivery of contract.*

It is also urged that the contract was unjust and unfair on its face, and that the burden was thereby cast upon the appellees to prove its fairness. In this connection it is urged, also, that it was unfair and unjust, in fact.

We need not dwell with the question of the burden of proof. It appears affirmatively that the contract was not unfair nor unjust. Each of the parties had been married before, and each had reared a family of children. The decedent had eight children and the appellant had seven. They were mostly grown up and able to care for themselves, although some of the children of the appellant had not attained their majority. The first wife of the decedent died in March, 1907. Four or five months later he made the acquaint-

*3. SAME: reasonableness of contract: enforcement.*

ance of the appellant, and three months thereafter the marriage occurred. The decedent owned at that time two farms very heavily incumbered. The appellant had no means. She had only recently immigrated to this country from Ireland, and was working for wages in the family of a neighbor. After the marriage, the decedent sold one of his farms and reduced his indebtedness. According to the petition of the appellant herself, the net value of his estate at the time of his death was about $5,300. The value of the homestead property, the life lease of which is awarded to appellant, is about $1,500. One of the purposes of the decedent in entering into an antenuptial contract was to protect to that extent the inheritance of his children, all of whom had contributed by their labors to the little estate. That an antenuptial contract should be entered into under such circumstances is commendable rather than blameworthy.

Where fairly and honestly made, such a contract is entitled to the same consideration in its enforcement as any other. It is not claimed that the appellant was in any manner deceived as to the extent of the decedent's property.

The only claimed deception by appellant is that the decedent was suffering from a fatal malady at the time of his marriage and that she was not apprised thereof. The

**4. SAME: deceit.** malady was a cancer located in the ear, and it finally caused his death. It is assumed in argument that this was a fraud upon the appellant. It is made to appear that the care of the decedent in the last four months of his life became especially burdensome. And yet, if he had died from other causes, it might have been still more burdensome. This was not a contract of insurance. Nor was there any warranty of soundness. The rule of the marriage contract is *caveat emptor*, "for better or worse." The appellant does not say that she would not have married the decedent if she had known of

his malady. We will charitably presume that she married him out of sufficient affection to render immaterial the state of his health or the expectancy of his life. We are well satisfied upon this record that the alleged antenuptial contract was duly and legally entered into, and that it should be sustained. *Fisher v. Koontz*, 110 Iowa, 498; *Nesmith v. Platt*, 137 Iowa, 292; *Jacobs v. Jacobs*, 42 Iowa, 600; *In re Devoe*, 113 Iowa, 4.

II. The foregoing disposes of all questions which have been submitted for our consideration. We deem it proper to note, however, that we only hold the validity of the antenuptial contract. We are not holding that such contract necessarily operates as a bar to the allowance of a year's support. That question is not presented for our consideration. The trial court did refuse appellant's application. Whether such refusal was based upon the assumption that the contract operated of legal necessity as a bar to such allowance, or whether it was refused in the exercise of the court's discretion in the light of all the circumstances disclosed in the evidence, does not appear from the record before us. It seems to have been assumed in argument on both sides that the antenuptial contract, if valid, would necessarily defeat the application for the year's support as well as the other applications, and it is quite probable that this assumption obtained in the trial below. We have recently held at our present term that such a contract does not necessarily bar the allowance for support, and that the trial court may upon proper showing make such allowance notwithstanding the forbidding provisions of an antenuptial contract. *Johnson v. Johnson*, 154 Iowa, 118. The ground of such holding is that public policy forbids interference with the discretion of the court in such a case, and that such support, when allowed, should be deemed as a part of the costs of administration. This is a provision for the protection of the family of the decedent which

5. SAME:
allowance
to surviving
widow.

may include young children born of the marriage whose due protection can not await the slow process of a distribution of the estate. Other circumstances may furnish appropriate reason for such allowance. Whether, therefore, an allowance for support should be made, is still a question to be determined in the discretion of the trial court in the light of all the circumstances. The existence of the antenuptial contract and its provisions may properly be considered as a part of the circumstances. In view of the uncertain state of the record and in view of the fact that our recent holding is our first definite pronouncement on that subject, we think that question ought to be reserved from the adjudication in this case so that it may receive the consideration of the lower court in the light of our holding in *Johnson v. Johnson, supra.* To this extent the order entered below will be modified, and in all other respects affirmed.—*Modified* and *affirmed.*