In re ROSSITER'S ESTATE.

No. 29899. May 26, 1942.

Rehearing Denied Oct. 13, 1942.

*129 P. 2d 856.*

C. B. McCrory, Minnie L. Dettweiler, and Nell W. Bracken, all of Okmulgee, and Maude Rounsaville, Jewell Russell Mann, and Louetta Bellamy, all of Tulsa, for plaintiff in error.

C. M. Gordon, of Okmulgee, for defendant in error.

ARNOLD, J. The deceased, Joseph P Rossiter, and Chlora E. Dobbins were married on May 22, 1926; at the time he was a widower and had one child, John R. Rossiter, by the former marriage. On March 30, 1926, an antenuptial agree-

ment was entered into by and between the said deceased and the said Chlora E. Dobbins. The agreement, in part, is as follows:

"The party of the first part agrees to give to the party of the second part an undivided one-fourth interest in whatever estate he may leave at the time of his death if the party of the second part survive the party of the first part as his lawful widow, and the party of the second part agrees to accept said one-fourth interest in whatever estate party of the first part leaves at the time of his death, as a full, complete and final satisfaction of all her rights and interests in his estate and property, and the party of the second part further agrees that the party of the first part may dispose of the remaining three-fourths interest in his estate in any manner which he sees fit and deems proper.

"It is also agreed between the parties hereto that after said marriage is performed the party of the first part shall have the right and privilege of managing his property, selling, mortgaging and disposing of the same with the same freedom in the future as he has exercised in the past.

"It is also agreed and understood between the parties hereto that the party of the first part has a married son, John R. Rossiter, whom he may wish to aid and assist in various ways and he might desire to help finance said son in establishing a business and it is agreed and understood that the party of the first part is to have the right and privilege of doing whatsoever he deems wise and proper in aiding and assisting his son, John."

Joseph P. Rossiter was a lawyer and it is apparent that the agreement was drawn by him or under his direction.

In 1935 the deceased executed deeds conveying an undivided one-fourth interest in and to his property to his wife, Chlora E. Rossiter, and an undivided three-fourths interest therein to his said son. Thereafter, on January 9, 1937, he made a will devising an undivided one-fourth interest to his wife and an undivided three-fourths interest to his son in and to his estate, both real and personal, remaining after the payment of debts and funeral expenses and a small bequest of $100 to a third person.

On January 16, 1938, Joseph P. Rossiter died, and thereafter his will was admitted to probate in the county court of Okmulgee county, Okla. His wife and son were appointed executors.

The record discloses that the deceased died seised of $4,698.89 in the bank and certain other property not theretofore deeded; that there was no homestead that the property conveyed to the wife and son prior to his death was rather rough and hilly land scattered in several counties, and that the income therefrom was hardly sufficient to pay the taxes; that he left two insurance policies—one in the amount of $2,000 payable to his wife and the other in the amount of $3,000 payable to his son; that the wife used her $2,000 to buy a small home.

After the will was admitted to probate, and on July 7, 1938, the widow, Chlora E. Rossiter, filed an application for widow's allowance. The son filed a response thereto alleging that the antenuptial contract in question had been entered into; that the terms thereof had been fully carried out, and that the applicant had accepted the benefits thereof, as well as elected to take under the will, the terms of which were in conformity therewith; that by reason thereof "she is estopped from claiming any other benefits which might otherwise have accrued to her as widow of the said Joseph P. Rossiter, deceased, and respondent states that she waived and surrendered any such rights by the execution of said antenuptial contract aforesaid." The county court found that by the execution of the antenuptial contract she had waived her statutory allowances, and denied her application. An appeal was taken to the district court, and after a trial de novo the court found that the antenuptial contract precluded her from the right to a widow's allowance; that the terms thereof were fully carried out and accepted by her; that no fraud or duress was alleged or shown; and that as a matter of law she was not entitled to a widow's allow-

344

ance, denied her application and dismissed her appeal. Chlora E. Rossiter appealed to this court.

Antenuptial contracts are expressly authorized by the laws of this state, and if such agreements are fair and reasonable, will ordinarily be upheld. See Leonard v. Prentice, 171 Okla. 522, 43 P. 2d 766; In re Cole's Estate, 85 Okla. 69, 205 P. 172, and the other cases to the same effect. However, we have not passed upon the question as to whether the right to a widow's allowance, as provided by law, may be waived by such an agreement.

The majority rule, as announced by other jurisdictions, is that the right to a widow's allowance may be waived or relinquished by an antenuptial agreement that expressly or by necessary implication includes such a right. See 21 Amer. Jur. § 311, at page 563; 24 C. J. § 811, at page 251; Deller v. Deller, 141 Wis. 255, 124 N.W. 278, 25 L.R.A. (N.S.) 751; Dunsworth v. Dunsworth, 148 Kan. 347, 81 P. 2d 9, and many other cases. In this connection a great many cases hold that, since a widow's claim to a family allowance is strongly favored by all jurisdictions, the right of a widow to a family allowance will not be held to have been surrendered by an agreement except by clear and explicit language; that such an agreement must be interpreted in the light of all surrounding circumstances, the particular language employed and all other elements. of the transaction having any bearing thereon. See Mahaffy v. Mahaffy, 61 Iowa, 679, 17 N. W. 46; In re Whitney, 171 Cal. 750, 154 P. 855; Pulling v. Wayne, 85 Mich. 34, 48 N. W. 48; Lowe v. Lowe, 163 Mo. App. 209, 146 S. W. 100; In re Meyer's Estate, 115 Cal. App. 443, 1 P. 2d 1013; In re Shapero's Estate, 39 Cal. App 144, 102 P. 2d 569; Guhl v. Guhl, 376 Ill. 100, 33 N. E. 2d 185.

The minority view is to the effect that under no circumstances can a wife, by an antenuptial contract, deprive herself of the right to a widow's allowance. In reaching this conclusion in Re Johnson, 154 Iowa, 118, 134 N. W. 753, 37 L. R.

A. 875, the Iowa Supreme Court said as follows:

"It is conceded for appellant that in a case recently decided in this court—Re Miller, 143 Iowa, 120, 121 N. W. 700, it was held that antenuptial contract cutting off all rights of the wife surviving her husband in his estate does not defeat her right to the allowance authorized by Code, sec. 3314, provided the court shall find such allowance to be proper under the circumstances. Counsel for appellant seek to distinguish the present case from the one just cited on the ground that in the antenuptial contract now before us the intended wife specifically relinquished all claims against her prospective husband's property or estate, with the specification that such relinquishment should include and cover 'all. claims for dower, support and maintenance out of the estate' of her husband. We think no such distinction can properly be made. In that case it was held that the allowance provided for by statute was not to be made out of the estate of the husband, but out of property of which he died seised, and that the amount of his estate for distribution could only be determined after costs of administration had been deducted from his property, and that the allowance to the widow is one of the expenses of administration. It is there said that the allowance authorized to be made to widow and children does not relate in any sense to an interest in the property of the husband; and by quotation from Re Peet, 79 Iowa, 185, 44 N. W. 354, it is said that the provisions of the statute in this respect embrace interests of the public as well as of the wife and children. In the case of Phelps v. Phelps, 72 Ill. 545, 22 Am. Rep. 149, cited with approval in the Miller Case, this language is used; 'The right of the wife (and minor children) to support during marriage is not an interest, strictly speaking, in the property of her husband. It is a benefit arising out of the marital relation by implication of law. . . . It comes within no definition of property. It is a benefit created in their favor by positive law, and adopted for reasons deemed wise and politic. . . . We are at a lost to understand how this humane provision of law for the family of a deceased party can be affected by an antenuptial contract; however broad and comprehensive its terms. . . . It is undeniable law that a party may waive the advantage

of a statute intended for his sole benefit, but there are grave reasons why a law enacted from public consideration should not be abrogated by mere private agreement. The statute we are considering is of this character. It was intended to throw around the persons named that protection they are unable, in their helplessness, to procure for themselves. This is not a matter of mere private concern. It would be in contravention of the policy of this enactment to permit a party, by an antenuptial contract, to relieve his estate altogether from the maintenance of his widow and his children, when they could no longer sustain themselves.

"We now reach the conclusion that by no provision in an antenuptial contract, no matter how fair and reasonable it may be in itself, in view of circumstances of the parties, can the prospective wife relinquish or cut herself off from the right to an allowance for support under the statute, provided the court finds such allowance to be a proper one when applied for. Of course, the circumstances, including the provisions of the contract itself, may be taken into account in determining whether an allowance should be made; but if, in the particular case, the court finds an allowance to be proper, no relinquishment or waiver in the antenuptial contract can be relied upon to defeat the right to it."

See Re Miller, 143 Iowa, 120, 121 N. W. 700; In re Uker's Estate, 154 Iowa, 428, 134 N. W. 1061; Swingle v. Swingle, 36 N. D. 611, 162 N. W. 912; Herr v. Herr, 45 N. D. 492, 178 N. W. 443; McAdams v. McAdams, 177 Tenn. 67, 146 S. W. 2d 140.

Sections 1225 and 1226, O. S. 1931, 58 Okla. St. Ann. §§ 313 and 314, provide:

"The homestead is not subject to the payment of any debt or liability contracted by or existing against the husband and wife, or either or them, previous to or at the time of death of such husband or wife, except such as are secured by lien thereon, as provided in the laws relating to homesteads.

"If the amount set apart as aforesaid be less than that allowed, and insufficient for the support of the surviving spouse and children, or either, or, if there be no such personal property to be set apart, and if there be other estate of the decedent, the court may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances during the progress of the settlement of the estate, which, in case of an insolvent estate must not be longer than one year after granting letters testamentary, or of administration."

In Bacus v. Burns et al., 48 Okla. 285, 149 P. 1115, wherein the wife of the testator consented and agreed, by written instrument, to all the terms and conditions of his will wherein disposition of the homestead was made to a third person, we said:

"Under the Constitution of this state, the homestead is reserved for the benefit of the family. Section 2, art. 12 of the Constitution. Gooch v. Gooch et al., 38 Okla. 300, 133 P. 242, 47 L. R. A. (N. S.) 480; Alton Merc. Co. v. Spindel et al., 42 Okla. 210, 140 P. 1168. The surviving widow's right to use and occupy the homestead during her lifetime was not subject to testamentary disposition by the testator. It was not his to give or to take; it was her right, given to her under the Constitution of this state, and no act of his, by will or otherwise, could deprive her of this right. By consenting to the terms and provisions of this will, she did not waive her right to use and occupy the homestead during her lifetime. Her right to do so is not inconsistent with the terms and provisions of the will."

In principle we have an analogous situation with reference to the widow's allowance provided by our statute.

In Bank of Commerce & Trust Co. v. Trigg et al., 138 Okla. 216, 280 P. 563, in the opinion on rehearing, at page 567, we said:

"The opinion in this case is therefore modified, to provide that the widow be allowed $300 per month from the date of the death of the deceased to the 2nd day of July, 1923, which amount shall be paid out of the estate and charged as other costs of administration. All sums paid to her after the 2nd day of

July, 1923, should be charged to and against the one-third of the estate inherited by her heirs."

Considering the question involved, in the light of our statutes and decisions, we think that the reasoning and the conclusions reached by the Iowa Supreme Court expresses the better rule: that the care of the widow and/or children during the administration of the estate is a matter of public concern and that any provision by contract between the parties, which attempts to negative, either by express words or by implication, the statutory provision therefor and to supersede the discretion of the county court in the premises, is ineffectual and void as against public policy; and that therefore a prospective wife cannot waive or cut off her right to a widow's allowance under section 1226, supra, by a provision in an antenuptial contract.

The judgment is therefore reversed and the cause remanded, with directions to proceed in conformity with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, and GIBSON, JJ., concur. RILEY, HURST, and DAVISON, JJ., dissent.

---

RILEY, J. (dissenting). I am opposed to the judgment of the majority which directs the trial court to proceed counterwise to its order rendered denying a widow's allowance.

My opposition is based upon the sanctity of a fair and valid prenuptial contract. Basic law inhibits impairment of the obligations of contracts.

It is thought there is a fallacy contained in the view of the majority. Whereas it is said by the majority, "A provision in antenuptial contracts purporting to waive the statutory right to a widow's allowance is against the public policy of this state and void," the fallacy is that public policy is derived from and established by the Constitution and statutes of a state: The whole of the public policy within this state embraces both antenuptial contracts and widow's allowances. First things come first, so that in event the antenuptial contract in the case at bar was lawful in its inception and just, fair, and equitable by its terms in adjustment of the relations of the signatories, as I believe it to be, for it is so presumed in absence of an issue thereon, its terms are binding upon the parties.

If that relationship was so fixed in the lifetime of the parties, there should be no departure therefrom except for good cause after advent of death of a signatory.

To permit such departure by the interposition of a widow's allowance and its continuance within the law's delay is to allow consumption of assets of the estate to the detriment of those otherwise within provision of the law embracing inheritance. 24 C. J. 251.

The greatest inheritance that we all have is the law, for if there were no law, there would be no inheritance.

HURST and DAVISON, JJ., concur.