2013 OK CIV APP 55

**In the Matter of the ESTATE OF Charles Lee FULTON, Deceased.**

**Christine LeeAnn Fulton, Appellant,**

v.

**Estate of Charles Lee Fulton, Deceased, Appellee.**

**No. 111,092.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 18, 2013.

Gregory G. Meier, Angeline S. Morris, Meier & Associates, Tulsa, Oklahoma, for Appellant.

Ron Wright, Wright, Stout & Wilburn, P.L.L.C., Muskogee, Oklahoma, for Appellee.

WM. C. HETHERINGTON, JR., Presiding Judge.

¶ 1 Christine LeeAnn Fulton (Appellant) appeals an order finding an antenuptial agreement valid and certain personal property is subject to the antenuptial agreement and must be turned over to the Personal Representative of her husband's estate. For the reasons stated herein, the order of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

## Standard of Review

¶ 2 As the Court explains in *Estate of Holcomb*, 2002 OK 90, ¶ 8, 63 P.3d 9, 13:

> Probate proceedings are of equitable cognizance. While an appellate court will examine and weigh the record proof, it must abide by the law's presumption that the *nisi prius* decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law. Because a trial judge has an opportunity that is unavailable to an appellate court to observe the demeanor and conduct of the witnesses, deference should be accorded on review to the trial tribunal's resolution of conflicting testimony.

(Footnotes omitted.)

## Facts

¶ 3 According to Appellant's testimony, she and Charles Fulton (Fulton) met when she was 16 years old, she dropped out of high school after grade 11, and they lived together for a year prior to their June 19, 2009 mar-

riage, at which time she was 19 years old and he was about 54.

¶ 4 Before they were married, Fulton told her he wanted her to sign an antenuptial agreement and she agreed to do so. Two days before their wedding, Appellant and Fulton went to Fulton's attorney's office, the attorney advised that she needed a different attorney, and shortly thereafter they went to another attorney's office. At both offices an antenuptial agreement was read aloud to Appellant. She did not ask either attorney any questions about the antenuptial agreement. She had not met the second attorney prior to that time, did not pay him a fee, and did not have a fee agreement with him. She and Fulton executed the antenuptial agreement at the second attorney's office.

¶ 5 Section IV of the antenuptial agreement, entitled "Release of Marital Rights in Separate Property," provides that each of them "does hereby waive, relinquish and surrender all rights and interest, statutory or otherwise" to:

a) the right to share in the separate property of the other upon death, by way of dower, widow or widower, or statutory allowance or otherwise;

\* \* \*

c) the right to elect to take against the provisions of any Will made by the other, whether made heretofore or hereafter, insofar as separate property is concerned;

d) the Homestead rights of a surviving spouse, as to such separate property.[1]

¶ 6 Appellant testified she understood that separate property remained separate. At the time she signed the antenuptial agreement she did not understand terms like "dower," "derived," and "widow's allowance," and she was not offered any payment or consideration for signing. Prior to seeing the assets list in the antenuptial agreement, she was aware of some items and had not known of others. Exhibit A to the antenuptial agreement lists 15 properties with aggre-

gate values of $1,696,000 and six business, none of which are given values.

¶ 7 When she left the second attorney's office, she believed the list included all of Fulton's assets. During her relationship with Fulton, she helped by doing work in at least two businesses owned in whole or part by Fulton. Subsequent to the marriage they acquired a property in joint tenancy which they remodeled and developed as a bar. From his separate assets, Fulton provided $10,000 towards acquisition costs and $30,000 towards remodeling, and Appellant supervised work, arranged purchases, and made design and purchasing decisions.

¶ 8 On May 2, 2010, nearly a year after the marriage, Fulton executed a will, bequeathing various sums of money and other assets and devising properties to his five children from a previous marriage and his eight grandchildren, as well as to Appellant. Fulton's will provides that Appellant could reside at 910 Nelson Drive, Muskogee, Oklahoma, the place she and Fulton had lived, until one of his grandchildren became "of age," a time period Appellant testified was about 13 years, and "so long as she is single and no one else lives with her." Fulton died on November 22, 2011.

¶ 9 According to Appellant, a man named Shelby moved in with her at 910 Nelson Drive about a month after Fulton's death. She had obtained a restraining order against a co-owner of one of Fulton's businesses and was advised by a police officer to have someone stay with her. Fulton's will also provided that his mother, Mary Lou Berryhill (Berryhill) could have any of his possessions even if left to someone else. Berryhill elected to take two properties in Muskogee, the 910 Nelson Drive property and another at 2300 and 2300½ Delaware. According to Appellant, she and Shelby were evicted from 910 Nelson Drive in February of 2012. At the time of trial, she and Shelby continued to live together in an apartment.[2]

---

1. Section b of this section addressed intestacy. As noted below, Fulton died testate.

2. Appellant claimed Shelby was unable to work due to health issues. She also testified Shelby's mother had lived there for a time and had contributed to some expenses. At the time of trial her brother had just moved in with her and Shelby.

¶ 10 After the filing of competing petitions seeking letters testamentary, Fulton's will was admitted to probate and the first person he designated in the will was appointed Personal Representative of the estate. On January 26, 2012, Appellant filed a petition seeking a declaratory judgment the antenuptial agreement was void due to Fulton's misrepresentations about his separate property and a failure of consideration for her to forego statutory rights to homestead and a widow's allowance. The same day, she filed an election to take under the will, asserting the antenuptial agreement is void and she is entitled pursuant to 84 O.S.2011 § 44 to one-half of all property acquired by joint industry during coverture and a motion for an order releasing homestead property as defined in 58 O.S.2011 § 311[3] to her as a surviving spouse.

¶ 11 Prior to trial, Appellant stipulated that 910 Nelson Drive and those on Delaware were not estate property or homestead property which could be awarded to her. The Pretrial Conference Order identifies the issues to be litigated as: "Petition for Declaratory Judgment Declaring Antenuptial Agreement Void," "Motion for Order Releasing Homestead Property to Surviving Spouse," and "Motion for Widow's Allowance."

¶ 12 The trial court found the antenuptial agreement was valid and enforceable. It further was found certain items of personal property were not covered by the antenuptial agreement and Appellant was awarded the items "as probate homestead." Other personal property in her possession was found to be covered by the antenuptial agreement and to be estate property. The trial court directed that these items should be returned to the estate's Personal Representative. Lastly, the trial court "recognizes and incorporates" the stipulation which is a part of the Pretrial Conference Order.

¶ 13 In her appeal, Appellant raises three propositions of error: (1) the antenuptial agreement is void due to false and fraudulent claims by Fulton, (2) because she received no consideration for executing the antenuptial agreement, the trial court erred in denying her a widow's allowance from the estate, and (3) the trial court erred in ordering the return of certain personal property to the estate because no request for it was made in the Pretrial Conference Order, its return was affirmative relief, and there was insufficient credible evidence of the existence and value of some of the items alleged to be in her possession.

¶ 14 The elements of actionable common law fraud are: "the making of a false material misrepresentation which is made as a positive assertion, is either known to be false or made recklessly without knowledge of the truth, is made with an intention it be acted upon, and which is *relied on to the other party's detriment.*" *Howard Family Charitable Foundation, Inc. v. Trimble,* 2011 OK CIV APP 85, ¶ 47, 259 P.3d 850, 863. (Emphasis added.) Each element of fraud must be proved by clear and convincing evi-

---

**3.** This statute provides:

Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, except as in this title provided, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. The title to the land set apart for the homestead property shall pass, subject to the right of homestead, the same as other property of the decedent and shall be included in the decree of distribution. And in addition thereto, the following property must be immediately delivered by the executor or administrator to such surviving wife or husband, and child or children, and is not to be deemed assets, namely:

1. All family pictures.
2. A pew or other sitting in any house of worship.
3. A lot or lots in any burial ground.
4. The family Bible and all school books used by the family, and all other books used as part of the family library, not exceeding in value of One Hundred Dollars ($100.00).
5. All wearing apparel and clothing of the decedent and his family.
6. The provisions for the family necessary for one (1) year's supply, either provided or growing, or both; and fuel necessary for one (1) year.
7. All household and kitchen furniture, including stoves, beds, bedsteads and bedding.

No such property shall be liable for any prior debts or claims whatever.

dence. *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218.

¶ 15 It is difficult to understand how Appellant was defrauded into signing the antenuptial agreement by Fulton's lack of ownership of 910 Nelson Drive because even if he had owned it, under its terms she agreed to forego any claim to it, *i.e.*, she was waiving claims to even *less* property.[4] She raises no argument of any promises regarding the property made prior to the execution of the antenuptial agreement. Further, the erroneous inclusion of the property in a will executed a year later does not bear on the validity of the earlier antenuptial agreement. Appellant has not supported her allegation of fraud by clear and convincing evidence and it fails.

¶ 16 Appellant cites the test for determining the validity of an antenuptial agreement set out in *Matter of Estate of Burgess*, 1982 OK CIV APP 22, ¶ 19, 646 P.2d 623, 626, and argues the antenuptial agreement does not meet this test, which includes factors such as whether: fair and reasonable provisions are made for the party opposing the antenuptial agreement, there was a full, fair, and frank disclosure of the other spouse's worth before its execution, and, if neither of these things occurred, the challenging party in fact had a generally accurate knowledge of the other's worth. Here, Appellant lived with Fulton for a year prior to the marriage and she was informed of properties and businesses in which he claimed an interest prior to her execution of the antenuptial agreement. She worked in some of those businesses and took no steps to investigate any claimed ownership interests. Despite her assertions to the contrary, the evidence supports a conclusion she had a generally accurate knowledge of Fulton's worth prior to her execution of the antenuptial agreement. *See Griffin v. Griffin*, 2004 OK CIV APP 58, 94 P.3d 96. We find this case persuasive, and we also find its test was met. The finding the antenuptial agreement is valid will not be disturbed premised on an alleged failure to meet this test.

¶ 17 Based upon his presence in 910 Nelson Drive, the Personal Representative (who Fulton's will describes as his best friend), testified to the existence of pre-marital, separate property he claimed was missing. He also testified Appellant had admitted she has some of this property. Appellant claims this is surprise testimony constituting a lack of due process because she "had no notice or opportunity to prepare to refute the allegations." We disagree. Appellant moved for the release to her of homestead property as defined in 58 O.S.2011 § 311. The trial court necessarily needed to determine what property was subject to such a release. Her motion on this issue is listed for determination in the Pretrial Conference Order. The status and identity of this disputed property was properly before the trial court.

¶ 18 The trial court granted her homestead rights in some property and not in other property. Appellant argues credible evidence is lacking to support the value and existence of some of this property. The Personal Representative testified as to this property's value and existence. The weight to be accorded evidence, that is its power to persuade, *see Estate of Holcomb*, 2002 OK 90, nt. 3, 63 P.3d 9, 13, presents a question for resolution by the fact-finder, here the trial judge. Resolution of the issue of homestead property pursuant to her own motion for its release is squarely and specifically identified in the Pretrial Conference Order. No lack of due process is indicated, and the allegation of error fails.

¶ 19 Appellant argues the trial court erred in finding the antenuptial agreement waiver of a widow's allowance was effective. Whether to approve such an allowance is discretionary with the trial court under 58 O.S.2011 § 314, but the trial court's denial in this case was not based upon an exercise of discretion but instead on a finding the antenuptial agreement precluded such an award. In support of her allegation of error, Appellant cites *Matter of Estate of Meyers*, 1985 OK 87, 709 P.2d 1044, in which the Oklahoma Supreme Court joined the majority of juris-

4. In Exhibit A to the antenuptial agreement, Fulton valued the 910 Nelson Street and Delaware properties at a total of $285,000 of the $1,696,000 total.

dictions by overruling the judicially created rule prohibiting such a waiver set forth in *In re Rossiter's Estate,* 1942 OK 211, 191 Okla. 342, 129 P.2d 856. However, the Court clearly conditioned the effectiveness of such a waiver upon there being no minor or dependent children and upon a waiver which is "clear and express and supported by adequate consideration." *Id.,* 1985 OK 87, ¶ 10, 709 P.2d at 1049. No minor or dependent children are involved here. However, as Appellant points out, she received no consideration for her execution of a waiver of a widow's allowance. Absent such consideration, the waiver may not stand.

### Conclusion

¶ 20 The claim of fraud in the execution of the antenuptial agreement lacks requisite support, as does Appellant's due process claim. The trial court's findings are affirmed as to all but the waiver of a widow's allowance. As to the effectiveness of the waiver of such an allowance by the antenuptial agreement, the order is reversed. Having found the waiver within the antenuptial agreement ineffective, the question of a widow's allowance is remanded to the trial court for determination under the circumstances.

¶ 21 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

MITCHELL, J., and GOREE, J., concur.